UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------- x
                                                      :
VINCENT MORENO, *pro se*,                             :
                                                      :
                              Petitioner,             :        **OPINION & ORDER**
                                                      :        06-CV-2136 (DLI) (CLP)
-against-                                             :
                                                      :
ROBERT KIRKPATRICK,                                   :
                                                      :
                              Respondent.             :
                                                      :
                                                      :
----------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

On May 5, 2006, *pro se* petitioner sought a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 challenging his conviction of murder in the first degree after a jury trial held in Kings

County Supreme Court.   Petitioner is currently incarcerated serving his sentence of life

imprisonment without parole, imposed on September 6, 2002.

The petition alleges that: (1) the trial court erred in refusing to submit to the jury a charge

of manslaughter in the first degree as a lesser included offense of murder in the first degree; (2)

his sentence is excessive; (3) he did not receive effective assistance of counsel because appellate

counsel refused to raise certain issues on direct appeal; (4) he was denied his right to a public

trial when his girlfriend was removed from the courtroom during a pre-trial hearing; (5) he was

denied a fair trial due to prosecutorial misconduct; and (6) he was denied a fair trial because of

the court's derogatory tone and manner towards defense counsel and interference with his

examination of a witness.   Petitioner asserts two additional ineffective assistance of counsel

claims, on the grounds that neither appellate nor trial counsel objected to the omission of a

special verdict as to a justification defense from the verdict sheet and the court's improper jury

instruction on the defense of justification.

For the reasons set forth below, the petition is denied in its entirety.

## I.    BACKGROUND

### A.    Petitioner's Arrest

On October 24, 2000, petitioner and co-defendant approached Joseph Rodriguez while he assisted Joanne Gagliardi with a flat tire in front of Bushwick High School in Brooklyn, New York, where petitioner and co-defendant were students.[1]  (Trial Tr. at 338, 342-45, 347, 368-69, 373, 381.)  During the ensuing confrontation, petitioner shot Rodriguez, who died in the hospital from a single gunshot wound to the neck from a .22 caliber revolver.  (Trial Tr. at 184-85, 357, 425, 455, 469, 471-72, 583, 607-09.)  Petitioner was arrested two days after the shooting, after telling school psychologist Amy Zimmerman that he had shot somebody during a robbery.  (Trial Tr. at 191-92, 488-97, 551.)  A Kings County grand jury returned an indictment charging petitioner with one count of murder in the first degree, three counts of murder in the second degree, two counts of attempted robbery in the first degree, one count of attempted robbery in the second degree, one count of criminal possession of a weapon in the second degree, and one count of criminal possession of a weapon in the third degree.  (*See* Aff. of Keith Dolan in Opp. to Pet. for a Writ of Habeas Corpus at ¶ 6.)

### B.    Pre-trial Proceedings

The court heard extensive testimony at a hearing held over several days, including testimony from Lieutenant John Corbisiero, who testified regarding a police line-up during which two witnesses identified petitioner as the perpetrator of the crimes charged.  (Hearing Tr. 2/25/02 at 70-72.)  The court also heard from Ms. Zimmerman, who testified regarding her conversation with petitioner during which he admitted to his involvement in the shooting.  (Hearing Tr. 5/16/02 at 346-82.)  Ms. Zimmerman was asked whether she posted a photograph in

---

[1] Petitioner was over 18 years old at the time.

her office in which she appeared hugging petitioner. (Hearing Tr. 5/16/02 at 354.) The court interrupted defense counsel's direct examination at this point to order a young woman from the audience to leave the courtroom. (Hearing Tr. 5/16/02 at 354.)

After the close of Ms. Zimmerman's testimony, the prosecutor requested clarification from the court regarding the reasons for the exclusion. (Hearing Tr. 5/16/02 at 384.) The court explained that the woman was asked to leave the courtroom because she said she had the picture that was discussed with Ms. Zimmerman. (Hearing Tr. 5/16/02 at 385.) Emphasizing that "[s]he was quite adam[a]nt and animated in saying 'I seen [sic] the picture,'" the court explained "that reaction forced me . . . to ask her to leave, because she may be a witness." (Hearing Tr. 5/16/02 at 385-86.) The woman, petitioner's girlfriend, was permitted to return to the courtroom during the trial. (Hearing Tr. 5/16/02 at 386; Trial Tr. at 175-77.) The picture ultimately was introduced as an exhibit during Ms. Zimmerman's trial testimony. (Trial Tr. at 558-59, 565.)

On May 20, 2002, petitioner's trial counsel submitted a letter to the court asserting that the court hampered his pre-trial examination of Ms. Zimmerman by preventing him from establishing that a privilege existed between Ms. Zimmerman and petitioner. (Petioner's Brief in Supp. of *Habeas Corpus* Petition ("Pet.") Ex. 1 at 3.) The court denied counsel's request that Ms. Zimmerman be recalled so he could complete his examination prior to the commencement of jury selection. (Jury Selection Tr. 5/21/02 at 9.)

**C.     Trial**

The trial began on May 31, 2002. Ms. Gagliardi testified that Rodriguez was helping her change a flat tire when petitioner told him to stand up and turn around. (Trial Tr. at 348.) Petitioner then pointed a revolver at Rodriguez, and told Rodriguez to give him the silver chain he wore around his neck. (Trial Tr. at 350.) When Rodriguez did not comply, petitioner shot him in the neck from a distance of about two to three feet. (Trial Tr. at 351, 412.) The medical

3

examiner ("ME") testified that her autopsy revealed that the bullet was fired from a distance of eighteen to twenty inches and traveled downward from the front to back of Rodriguez's body, probably as Rodriguez stood with his trunk inclined toward the ground.  (Trial Tr. at 610-18.)  A police detective who interrogated petitioner following the shooting testified that petitioner said he and co-defendant saw a man standing by a car, exchanged glances and then argued, whereupon the man picked up a tire iron and moved toward him.   (Trial Tr. at 243-44.)  Petitioner claimed he pulled the revolver from his pocket and, as he backed away, the gun "just went off."  (Trial Tr. at 244.)

### D.      Motion for Mistrial, Jury Charges, and Sentencing

Defense counsel moved for a mistrial on June 5, 2002, accusing the court of "hampering, interrupting, and, ultimately, impeding [the defense's] ability to effectively represent [petitioner]." (Mot. for Mistrial, Pet. Ex. 2 at 2.)  After hearing argument on June 7, 2002, the court denied the motion, stating that it had provided petitioner with a fair and impartial trial.  (Trial Tr. at 686-87.) Defense counsel then asked the court to submit a charge of manslaughter in the first degree to the jury if intentional murder was also charged.  (Trial Tr. at 691.)  In rejecting the request, the court held that "no reasonable view of the reasonable evidence" could support a finding of manslaughter in the first degree.  (Trial Tr. at 892.)

The court submitted the following charges to the jury:  (1) felony murder in the first degree, (2) murder in the second degree, (3) felony murder in the second degree, (4) attempted robbery in the first degree, and (5) criminal possession of a weapon in the second degree.  (Trial Tr. at 1049-70.)  It also instructed the jury on the defense of justification for murder in the second degree, but omitted that defense from the jury's verdict sheet, which was signed by the government and defense counsel.  (Trial Tr. at 1054-57.)  Following his conviction by the jury of

first-degree murder on June 12, 2002, petitioner was sentenced on September 6, 2002 to life without parole. (Trial Tr. at 1103; Sentencing Tr. 9/6/2002 at 21.)

### E. Procedural History

#### 1. Direct Appeal

Defense counsel appealed petitioner's conviction on the ground that: (1) the trial court erred in denying petitioner's request to submit the charge of manslaughter in the first degree as a lesser included offense of murder in the first degree, and (2) petitioner's sentence was excessive. On March 7, 2005, the Appellate Division, Second Department, unanimously affirmed defendant's conviction, finding that the trial court had properly denied defendant's request to submit first-degree manslaughter as a lesser included offense because, viewing the evidence in the light most favorable to the defendant, there was no reasonable view that defendant intended to cause serious physical injury to Rodriguez rather than to kill him. *See generally People v. Moreno*, 16 A.D.3d 438 (2d Dep't 2005). It further concluded that the sentence imposed was not excessive. *Id.* By certificate dated June 17, 2005, the New York State Court of Appeals denied petitioner's application for leave to appeal. *People v. Moreno*, 5 N.Y.3d 766 (2005). Petitioner did not seek a writ of *certiorari* from the U.S. Supreme Court.

#### 2. Two Writ of Error *Coram Nobis* Petitions

On August 18, 2005, petitioner, *pro se*, moved for a writ of error *coram nobis*, claiming he was denied effective assistance of appellate counsel because, on direct appeal, his attorney did not raise: (1) issues petitioner presented to appellate counsel, (2) the trial court's error in removing petitioner's girlfriend from the courtroom, (3) claims of prosecutorial misconduct, and (4) the trial judge's rulings, tactics and demeanor towards defense counsel and interference with the examination of a witness. On December 12, 2005, the Appellate Division unanimously rejected petitioner's application for the writ. *People v. Moreno*, 24 A.D.3d 571 (2d Dep't 2005)

(finding that petitioner "has failed to establish that he was denied the effective assistance of appellate counsel").  Petitioner's request for leave to appeal his denial of a writ of error *coram nobis* to the New York State Court of Appeals was denied by a certificate dated March 31, 2006.  *People v. Moreno*, 6 NY.3d 836 (2006).  Petitioner did not seek a writ of *certiorari* in the U.S. Supreme Court.

On May 30, 2007, petitioner filed a second *pro se* petition for a writ of error *coram nobis* in the Appellate Division, claiming that he was denied effective assistance of appellate counsel in light of appellate counsel's failure to raise ineffective assistance of trial counsel.  The Appellate Division denied petitioner's application for the writ on September 11, 2007.  *People v. Moreno*, 43 A.D.3d 964 (2d Dep't 2007) (holding that "the appellant has failed to establish that he was denied the effective assistance of appellate counsel").  On December 19, 2007, the New York State Court of Appeals denied petitioner's request for leave to appeal by certificate.  *People v. Moreno*, 9 N.Y.3d 1008 (2007).  Petitioner again did not seek a writ of *certiorari* in the U.S. Supreme Court.

### 3. Habeas Corpus Petition

The instant petition was filed on May 5, 2006, and subsequently amended to incorporate the claims asserted in the second *coram nobis* petition.  (*See* Electronic Order dated 4/11/2007.)  The case was stayed until November 20, 2008, pending exhaustion of the claims in petitioner's second *coram nobis* petition.  (*See* Electronic Order dated 11/28/2008).

## II. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions entered after 1996 when the state courts have adjudicated a petitioner's federal claims on the merits.  Under the AEDPA standard, federal courts may grant habeas relief only if the state court's adjudication on the merits:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable determination" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413.

A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The court holds petitioner's *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). As such, the court interprets the petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

## A.    Claim One: Improper Refusal to Submit a Manslaughter Charge

The Supreme Court has held that "where the evidence warrants such a charge, due process requires a trial court to submit jury instructions on lesser-included offenses in capital cases." *Martinez*, 2009 WL 2244633, at *8 (citing *Beck v. Alabama*, 447 U.S. 625 (1980)).

However, "[b]oth the Supreme Court and the Second Circuit have declined to extend this requirement to non-capital cases." *Id.* (citing *Beck*, 447 U.S. at 638 n.14; *Jones v. Hoffman,* 86 F.3d 46, 48 (2d Cir. 1996); *Knapp v. Leonardo,* 46 F.3d 170, 179 (2d Cir. 1995)).

To establish entitlement to a lesser-included offense charge, a defendant must show that "(1) it is theoretically impossible to commit the greater crime without committing the lesser and (2) a reasonable view of the evidence would permit the jury to find that the defendant had committed the lesser, but not the greater, offense." *Martinez v. Breslin*, 2009 WL 2244633, at *8 (S.D.N.Y. July 28, 2009) (quoting *Rice v. Hoke,* 846 F.2d 160, 165 (2d Cir. 1988)); *see also N.Y. Crim. Proc. Law* § 300.50(1). Here, plaintiff failed to establish that he was entitled to such an instruction, as no reasonable view of the evidence supports a finding that petitioner committed manslaughter but not first degree murder.

Under New York Penal Law § 125.20, an individual is guilty of first degree manslaughter when, "with intent to cause serious physical injury to another person, he causes the death of such person[.]" In contrast, an individual is guilty of first degree murder when, "[w]ith intent to cause the death of another person, he causes the death of such person . . . [and] the victim was killed while the defendant was in the course of committing or attempting to commit and in furtherance of robbery," among other enumerated offenses. N.Y. Penal Law § 125.27(1)(a)(vii). The significant difference between the two charges is the mental state of the defendant, specifically, whether he intends to cause "serious physical injury" or "death."

Plaintiff satisfies the first prong of the analysis, as it is possible to commit manslaughter in the first degree by intending to cause "serious physical harm," without committing murder in the first degree, which requires intent to cause death. Nevertheless, the lesser included charge of manslaughter fails the second "reasonable view of the evidence" prong of the analysis. The only available evidence of petitioner's intent is his self-serving statement to the police that the

shooting was inadvertent because the gun "just went off." (Trial Tr. at 669). Nowhere in his statement does petitioner suggest that he only intended to cause serious physical injury, not death, when he shot Rodriguez at close range. Moreover, Ms. Gagliardi testified consistently with the ME's testimony that petitioner shot Rodriguez from several feet away. (Trial Tr. at 412, 618.) A reasonable view of the evidence does not support petitioner's claim that he only intended to cause serious injury in pointing the gun at such vital areas as Rodriguez's neck and chest, and firing at such close range, but rather suggests strongly that he intended to cause death. The evidence thus supports an intentional murder charge. *See People v. Jackson*, 173 A.D.2d 851, 851 (2d Dep't 1991) (sufficient evidence to establish defendant's intent to cause death where petitioner fired a gun at the victim's head at close range); *People v. De Jesus*, 244 A.D.2d 244, 244 (1st Dep't 1997) (evidence "established that defendant acted with the intent to cause the death of the victim by stabbing him in the neck"). Accordingly, the omission of lesser included charge of manslaughter did not constitute error.

### B. Claim Two: Excessive Sentence in Light of Petitioner's Personal History

Petitioner asserts that his sentence of life imprisonment without parole is excessive in light of his depression, lack of a criminal record, and the lack of supervision he received during his tumultuous youth. He fails to offer any legal support for his claim. After a careful review of this claim in deference to petitioner's *pro se* status, the court finds that it lacks merit.

Petitioner fails to assert a proper constitutional claim for excessive sentence. The Second Circuit has held that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *Hudgins v. New York*, 07-CV-01862 (JFB), 2009 WL 1703266, at * 9 (E.D.N.Y. June 18, 2009) (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)). Under N.Y. Penal Law § 70.00(5), "a defendant may be sentenced to life imprisonment without parole upon conviction for the crime of murder in the first degree[.]" Thus, the sentence

of life imprisonment, which is explicitly within the statutory range for the crime for which he has been convicted, is not subject to federal *habeas* review.

Moreover, under 28 U.S.C. § 2254(a), a federal court may hear a habeas corpus application "pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The reversal of a sentence following a valid conviction on grounds that it is unduly harsh or severe is a matter of state law. *See Dantzler v. Superintendent, Sing Sing Correctional Facility*, 09-CV-1513 (JG), 2009 WL 3055297, at *5 & n.1 (E.D.N.Y. Sept. 22, 2009) (finding no basis for federal *habeas corpus* relief under N.Y. C.P.L. § 470.15(6)(b), which gives the Appellate Division the power to modify a sentence in the interests of justice where it considers the lower court's decision to be legal but unduly harsh or severe). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Indeed, it is well-established that the court is not bound to find petitioner's sentence excessive based on the mitigating factors alleged. *See, e.g., DeJesus v. Senkowski*, 00 Civ. 7926 (RJH) (THK), 2006 WL 2707330, at *12 (S.D.N.Y. Sept. 20, 2006) (denying habeas relief based on petitioner's claim that "his sentence was excessive because of his age, lack of a criminal history, and ability to return to a law-abiding lifestyle"). In sum, petitioner's claim does not implicate federal law and cannot provide the basis for habeas relief.

### C. Claim Four: Denial of Public Trial Due to Temporary Exclusion of Petitioner's Girlfriend

Under the Sixth Amendment, "the accused shall enjoy the right to a speedy and public trial . . ." in all criminal cases. U.S. Const. amend. VI. Under *Waller v. Georgia*, 467 U.S. 39 (1984), a courtroom cannot be closed to the public unless:

> "[(1)] the party seeking to close the hearing . . . advance[s] an overriding interest that is likely to be prejudiced, [(2)] the closure . . . [is] no broader than necessary

to protect that interest, [(3)] the trial court . . . consider[s] reasonable alternatives to closing the proceeding, and [(4)] it . . . make[s] findings adequate to support the closure."

*Id.* at 48.

While "the violation of a defendant's right to a public trial is not justified by a finding that the error was harmless," the Second Circuit has held that "it does not follow that every temporary instance of unjustified exclusion of the public—no matter how brief or trivial . . . — would require that a conviction be overturned." *Gibbons v. Savage*, 555 F.3d 112, 119, 21 (2d. Cir. 2009) (holding that although the closure of the courtroom to petitioner's mother during voir dire was not justified under the *Waller* factors, the exclusion was too trivial to warrant reversal of his conviction). In assessing triviality, courts must consider the goals articulated in *Waller*, namely "(1) ensuring a fair trial, (2) reminding the prosecutor and judge of their responsibility to the accused and the importance of their functions, (3) encouraging witnesses to come forward, and (4) discouraging perjury." *Id.*; *see also Waller*, 467 U.S. at 46.

"[T]he right to a speedy and public trial has always been interpreted as being subject to the trial judge's power to keep order in the courtroom." *Cosentino v. Kelly*, 102 F.3d 71, 73 (2d Cir. 1996) (quoting *United States ex rel. Orlando v. Fay*, 350 F.2d 967, 971 (2d Cir. 1965)). *Waller* "does not demand a higher showing before excluding a defendant's friends and family." *Rodriguez v. Miller*, 537 F.3d 102, 108-09 (2d Cir. 2008). "If any spectators are disorderly, the court may properly exclude those individuals as required." *Shepard v. Artuz*, 2000 WL 423519, at *5 (S.D.N.Y. Apr. 19, 2000) (citing *Fay*, 350 F.2d at 970). In deciding to exclude individuals, the court must "balance between the requirement that the actions of the courts be open to public scrutiny and the need to have the trial proceed in an orderly manner." *Id.* (quoting *Fay*, 350 F.2d at 971).

Petitioner has not established that the exclusion of his girlfriend from the courtroom during the hearing testimony violated his Sixth Amendment right to a public trial. *See Cosentino*, 102 F.3d at 73 (finding no constitutional violation arising from partial closure, as "[t]he order allowed access to most members of the public . . . and many members of the defendants' families, and only barred those individuals who, in the court's judgment, posed a threat to the orderly conduct of the second trial"). The girlfriend interrupted the hearing by making statements about a photograph the prosecutor sought to introduce in evidence loud enough to be heard from the bench. (Trial Tr. at 354, 385-86). First, exclusion "advance[d] an overriding interest" in securing her as a relevant witness and isolating her from future trial testimony. *Waller*, 467 U.S. at 48. The court was advised at the end of the hearing and prior to trial that the girlfriend was not a witness, addressing the judge's concern that she might have been a witness with relevant evidence to present at trial, and, therefore, should be excluded. (Trial Tr. at 558-59, 565.) The introduction of the photograph during the trial shows that her exclusion from the hearing did not impact the introduction of evidence in any way. Such exercise of a trial judge's "broad power to sequester witnesses before, during, and after their testimony" serves to restrain "'improper attempts to influence the testimony' or tailoring of the testimony to that of earlier witnesses." *Serrano v. Fischer*, 412 F.3d 292, 298 (2d Cir. 2005) (quoting *Geders v. United States*, 425 U.S. 80, 87 (1976)).

With respect to the second and third prongs of the *Waller* test, the exclusion here was "no broader than necessary." *Waller*, 467 U.S. at 48. The judge excluded only petitioner's girlfriend while allowing all other family members and members of the public to remain, and did not preclude her from attending future proceedings. (Trial Tr. at 175-77.)

Fourth, while the court did not attempt to identify the woman or determine whether she was a viable witness at the time of the disruption, it explained the exclusion at the first break

following testimony, allowing the parties to state their positions on her exclusion from trial. (Hearing Tr. 5/16/02 at 384-85.)

Finally, even if the exclusion had been unjustified under *Waller*, it was far too trivial under *Gibbons* to warrant reversal of his conviction. It is clear that the closure in no way failed to "ensur[e] a fair trial," or to "remind[] the prosecutor and judge of their responsibility to the accused and the importance of their functions," since all remaining members of petitioner's family and the public were permitted to remain. *Gibbons,* 555 F.3d at 120-21.

## D.      Claim Five:  Prosecutorial Misconduct

Petitioner claims that the prosecutor made prejudicial comments that deprived him of his due process right to a fair trial. "His burden on this claim is a heavy one." *United States v. Newton*, 369 F.3d 659, 680 (2d Cir. 2004). The Supreme Court has cautioned that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Id*. (citing *United States v. Young,* 470 U.S. 1, 11 (1985)). "An aggrieved party must show more than mere trial error to secure reversal; he must demonstrate misconduct so egregious that, when viewed in the context of the entire trial, it substantially prejudiced him." *Id*.; *see also Miranda v. Bennett*, 322 F.3d 171, 179 (2d Cir. 2003) ("[P]rosecutorial misconduct cannot give rise to a constitutional claim unless the prosecutor's acts constitute egregious misconduct") (internal quotation marks omitted).

In assessing whether a defendant was substantially prejudiced by a prosecutor's misconduct, courts in the Second Circuit must consider "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent improper statements." *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (internal quotation marks and citation omitted). Although "[c]ourts observe a presumption that prosecutors act properly in furtherance of their duties," that presumption is "rebuttable by competent evidence." *Doe v.*

*Menefee*, 391 F.3d 147, 172 (2d Cir. 2004) (citing *United States v. Mezzanatto,* 513 U.S. 196, 210 (1995)).  Here, plaintiff submits insufficient evidence to raise an inference of egregious prosecutorial misconduct or prejudice.

Plaintiff alleges four instances misconduct that purportedly warrant reversal of his conviction.  First, he complains that the prosecutor improperly approached Lt. Corbisiero during a recess in the pre-trial hearing while he was still under oath and made statements regarding the line-up about which Lt. Corbisiero testified just before the break.  (Pet. at Section V.) Specifically, according to Lt. Corbisiero, the prosecutor said to him that "he was aware that he mixed up the order of the photographs" of the participants in the police line-up while identifying them during the lieutenant's examination.  (Hearing Tr. 2/25/02 at 113.)  However, defense counsel made extensive inquiries during the pre-trial hearing to determine whether the lieutenant's recollection and credibility were tainted by his communication with the prosecutor. (*Id*. at 112-117.)  The defense also moved for suppression of statements associated with the line-up based in part on the prosecutor's ill-advised communication with that witness.  (Hearing Tr. 5/21/02 at 11-15.)  Thus, even assuming that the prosecutor's conduct was improper, any prejudice was cured by defense counsel's on-the-record inquiries and the court's consideration of the issue in connection with defendant's motion to suppress.

Second, petitioner objects to certain comments made by the prosecutor to the trial judge during sidebar.  (Pet. at Section V.)  As none of these comments were made in the presence of the jury, they had no effect on the likelihood of conviction and thus do not serve as a basis for *habeas* relief.  *See Guastella v. United States*, 06-cv-2924 (SAS), 2009 WL 1286382, at *12 (S.D.N.Y. May 8, 2009) (finding no "unconstitutional prejudice" arising out of alleged prosecutorial misconduct which took place outside the presence of the jury); *Smith v. Keane*, No. 98-cv-5615 (JBW), 2003 WL 21850566, at *6 (E.D.N.Y. July 30, 2003) (where petitioner cited

only a "few instances of purported prosecutorial misconduct, most of which occurred outside the presence of a jury," there was "no basis for granting a federal *habeas corpus* writ"); *see also United States ex rel. Nelson v. Zelker*, 465 F.2d 1121, 1123 (2d Cir. 1972) (finding no prejudice where, *inter alia*, the colloquy in which there was alleged prosecutorial misconduct was held outside the presence of the jury).

Third, petitioner relies on two comments made by the prosecutor in the presence of the jury. In objecting to a question posed by defense counsel to Ms. Zimmerman during trial, the prosecutor responded to the defense's implication that petitioner acted in self-defense by saying "you can twist it any way you want." (Trial Tr. at 539.) Immediately after the objection was made, the trial judge heard the parties outside the presence of the jury. (Trial Tr. at 539.) After reconvening in open court, the judge gave a *sua sponte* instruction to the jury that "all comments or remarks made by counsel or between Court and counsel are to be disregarded. The sidebar is to be disregarded." (*Id.* at 541.) These measures properly cured any misconduct. As to the second comment, petitioner objects that during the ME's testimony, the prosecutor asked the witness to "slow down a bit so Ms. Napoli [the court stenographer] doesn't kill me." (*Id.* at 579.) This comment is innocuous, and nowhere near the type of egregious misconduct that would result in substantial prejudice to petitioner. *See Newton*, 369 F.3d at 680.

Finally, petitioner objects that the prosecutor improperly placed the burden of proof on the defense by telling the jury in his summation that petitioner "is the reason you're all sitting here." (Trial Tr. 970.) He further claims that it was improper for the prosecutor to imply that the defendant was a liar and make reference to his own personal beliefs through the use of phrases such as "I would suggest," "I submit to you," and "I'd suggest to you." (Pet. at Section V (citing Trial Tr. 980-1001).)

"[A] prosecutor's comments upon summation can 'so infect [a] trial with unfairness as to make the resulting conviction a denial of due process.'" *Jenkins v. Artuz*, 294 F.3d 284, 294 (2d Cir. 2002) (quoting *Darden v. Wainwright,* 477 U.S. 168, 181 (1986)). To be entitled to relief, petitioner must show "that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Tankleff*, 135 F.3d at 252 (internal quotation marks and citation omitted).

The court finds that the summation did not abridge petitioner's due process rights. "The government has broad latitude in the inferences it may reasonably suggest to the jury during summation." *United States v. Harry*, 308 Fed. Appx. 516, 517 (2d Cir. 2009) (quoting *United States v. Casamento,* 887 F.2d 1141, 1189 (2d Cir.1989)). "While it may not refer to facts that are not in the record or misstate evidence, the government may suggest to the jury inferences that can be fairly drawn from the evidence." *Id.* (citations omitted). The prosecutor did not transgress this standard, as his statements were "supported by evidence in the trial record and constitute permissible inferences that the prosecutor was allowed to argue to the jury." *Id.* Moreover, following summations, the trial judge properly charged the jury regarding the presumption of innocence and the government's burden of proof. (Trial Tr. at 1017-1018.) Under these circumstances, the prosecutor's remarks did not "infect[] the trial with unfairness [so] as to make the resulting conviction a denial of due process." *United States v. Cerome*, No. 08-2232-cr, 2009 WL 3449018, *1 (2d Cir. Oct. 28, 2009) (quoting *Darden,* 477 U.S. at 181)

### E.    Ineffective Assistance of Counsel Claims

Under the Sixth Amendment, criminal defendants "shall enjoy the right . . . to have the Assistance of Counsel for [their] defense." U.S. Const. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To prevail on an ineffective assistance of counsel claim, petitioner must demonstrate

that counsel's representation "fell below an objective standard of reasonableness" measured by "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A "reasonable probability" of a different result is a "probability sufficient to undermine confidence in the outcome." *Id.*

"The burden of establishing both constitutionally deficient performance and prejudice is on the defendant." *U.S. v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004) (citing *Strickland*, 466 U.S. at 687). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Generally, "strategic choices made by counsel after a thorough investigation of the facts and law are 'virtually unchallengeable,' though strategic choices 'made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Thomas v. Kuhlman*, 255 F. Supp. 2d 99, 107 (E.D.N.Y. 2003) (quoting *Strickland*, 466 U.S. at 690-91).

### 1.    Claim Three: Appellate Counsel's Failure to Raise Issues Suggested by Petitioner

The Supreme Court has held that "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983)); *see also People v. Stultz*, 2 N.Y.3d 277, 285 (2004) ("When it comes to the choice of issues, appellate lawyers have latitude in deciding which points to advance and how to order them."). This standard applies even when the client is suggesting non-frivolous claims for the attorney to raise on appeal. *See Jones*, 463 U.S. at 754 & n.7 (A criminal defendant does not have "a constitutional right to have appellate counsel raise

every nonfrivolous issue that the defendant requests"). "This process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir. 2002) (internal quotation marks and citations omitted). "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

Petitioner claims he was denied effective assistance of counsel because appellate counsel refused to raise certain issues on direct appeal that petitioner thought were stronger than those raised and was refused a new attorney assignment by Appellate Advocates. Petitioner does not specify the nature of the non-frivolous claims that he felt were more persuasive or stronger than the arguments presented on direct appeal. Appellate counsel raised two issues on appeal—that petitioner's sentence was excessive and that manslaughter should have been submitted to the jury as a lesser included offense to first degree murder. These arguments were presented in a well-organized brief. Therefore, appellate counsel's representation did not fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Since appellate counsel provided effective assistance of counsel to petitioner, Appellate Advocates was not required to assign a new attorney to petitioner's appeal.

## 2. Claim Six: Counsel Hindered by Court Action

Petitioner also claims he was denied effective assistance of trial counsel because the court did not allow counsel to represent petitioner effectively through its favorable attitude towards the prosecution, tone and manner towards defense counsel, and interference with the examination of a witness. Petitioner attempts to illustrate the trial court's alleged bias by reference to his trial counsel's letter dated May 20, 2002 and unsuccessful motion for mistrial dated June 5, 2002, in

which trial counsel claimed that the court impeded Ms. Zimmerman's examination.  (Pet. Ex. 1 at 3.)

The record does not support petitioner's claim that the court "hampered" petitioner's examination of Ms. Zimmerman.  At one point during his examination of Ms. Zimmerman, trial counsel asked a question which was objected to.  (Hearing Tr. 5/16/02 at 357.)  In responding to the objection, the court noted that another judge sought co-defendant's counsel for another matter and asked trial counsel to focus his questions.  (Hearing Tr. 5/16/02 at 357.)  In response, trial counsel stated that his examination should not be "hampered because Mr. Wright had to leave."  (Hearing Tr. 5/16/02 at 357.)  The court replied, "No. But you should not ask questions that are open ended and make no sense, Mr. Young.  Be pointed."  (Hearing Tr. 5/16/02 at 357-58.)  At the end of his examination, trial counsel stated that he had nothing further to ask, conferred with co-counsel, and then asked a few more questions. (Hearing Tr. 5/16/02 at 364.)  Trial counsel cross-examined Ms. Zimmerman after the government questioned her.  (Hearing Tr. 5/16/02 at 382.)  After the witness was excused, the court indicated that it sustained certain objections because it believed that trial counsel's last line of questioning was irrelevant to the hearing issues, namely, whether privilege existed between Ms. Zimmerman and petitioner. (Hearing Tr. 5/16/02 at 382-83.)

At the end of both examinations, counsel indicated that he was finished inquiring. Although the court did mention that co-defendant's counsel was due before another judge, its purpose was to have trial counsel make more pointed, non-objectionable inquiries.  The colloquy that took place after Ms. Zimmerman was dismissed does not show that the court limited counsel's ability to question the witness.  It simply shows that the court sustained an objection to a line of questioning that the court felt was beyond scope of the relevant issues before the court

at the hearing. The fact that counsel disagreed with the court's ruling does not mean that the court improperly interfered with his examination.

Petitioner also claims he was denied effective assistance of trial counsel because of the court's favorable attitude toward the prosecution and its tone and manner towards defense counsel. Reversal based on the trial court's conduct is only warranted if "the judge's behavior was so prejudicial that it denied [defendant] a fair, as opposed to a perfect, trial." *United States v. Amiel*, 95 F.3d 135, 146 (2d Cir. 1996) (internal quotation marks and citation omitted). The issue is not "whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid." *Id.* (internal quotation marks and citation omitted). The question is "whether the jury was so impressed with the judge's partiality to the prosecution that it became a factor in determining the defendant's guilt," or "whether it appear[ed] clear to the jury that the court believe[d] the accused is guilty." *Id.* (internal quotation marks and citation omitted). Specifically, "habeas relief on the ground of judicial misconduct at the state trial level is warranted only if the federal court determines that the alleged improprieties, taken in the context of the total trial, undermined fundamental fairness to the defendant." *Salahuddin v. Strack*, 97-CV-5789, 1998 WL 812648, at *8 (E.D.N.Y. Aug. 12, 1998).

The trial court's actions did not come close to undermining the fundamental fairness of the trial. Defense counsel's June 5, 2002 Motion for Mistrial, which petitioner references in support of this claim, only provides two specific examples where counsel felt the court was prejudiced against the defense. (Pet. Ex. 2) One example was the colloquy described above between counsel and the court after Ms. Zimmerman was dismissed as a witness. The other is the fact that the court convened "6 to 10 *sua sponte* side bars" during trial counsel's cross-examination of the first witness in the case, and "at those sidebars, acted in a manner, tone and voice that was hostile, intemperate and injudicial." (Pet. Ex. 2 at 3.) Based on the transcript, the

court does not find that the trial court acted inappropriately during the sidebar conversations. It is clear from the record that the judge called the sidebars to make sure the jury received a clear and smooth presentation of evidence, not to negatively affect petitioner's case. (*See*, *e.g.*, Trial Tr. 111-12 ("I want this cross examination to go through smoothly. I don't want to interrupt your cross . . . Let's not make it so choppy that the jurors would lose all perspective of what you want to do."), 134-36 ("I just want to save time and I don't want to hear objections . . . What I suggest you do is this, have an idea in mind where you want to go with this."), 155-159 ("I want your cross examination to go smoothly . . . in order to ultimately try to get this document in evidence or confront the witness with the document, there are appropriate questions you have to ask.").) The letter does not provide any proof for its bald accusation that "the Court was interrupting counsel not because counsel was being ineffective . . . but because counsel was being effective." (Pet. Ex. 2 at 2.) The actions of the trial court did not impair petitioner's representation by trial counsel, and, accordingly, do not support an ineffective assistance of counsel claim.

### 3. Claims Seven & Eight: Omission of Justification from Verdict Sheet and Improper Jury Instruction on Justification

In claims seven and eight, petitioner asserts that he was denied effective assistance of appellate and trial counsel because neither objected to the omission of justification from the verdict sheet as a defense to second degree intentional murder, or to an improper jury instruction on justification. These claims are similarly without merit.

Federal *habeas corpus* relief is not available based on an error with the jury instruction or form unless the error "so infected the entire trial that the resulting conviction violates due process." *Yeung v. Warden, Sing Sing Correctional Facility*, 97-CV-0106 (NAM) (GLS), 1999 WL 33504433, at *5 (N.D.N.Y. Dec. 9, 1999) (quoting *Blazic v. Henderson,* 900 F.2d 534, 541

(2d Cir.1990)); *see also Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (federal habeas review of state jury instructions not available just because instruction "may have been deficient"). Under New York Criminal Procedure Law, courts are not required to submit defenses on the verdict sheet. N.Y. C.P.L. § 310.20(2). The statute requires the court to submit a "list prepared by the court containing the offenses submitted to the jury by the court in its charge and the possible verdicts thereon," and does not mention defenses. *Id.*; *see also People v. Campbell*, 160 A.D.2d 717, 717 (2d Dep't 1990) (omission of justification defense from the verdict sheet did not unduly prejudice defendant); *People v. Fields*, 134 A.D.2d 365, 366 (2d Dep't 1987) ("The defendant's objection to the omission of the justification defense to the assault charge on the verdict sheet is without merit."). Therefore, it was not error to omit justification from the verdict sheet.

Even if the court had erred by omitting justification from the verdict sheet, any error would be harmless. Petitioner was found guilty of first degree murder, where justification was not a defense. The verdict sheet instructs the jury to stop deliberations if they found the defendant guilty of first degree murder and not reach a verdict on the rest of the lesser charges. *See Gutierrez v. McGinnis*, 389 F.3d 300, 308 & n.8 (2d Cir. 2004) (quoting *People v. Crimmins*, 36 N.Y.2d 230, 242 (1975)) (under New York law, "an error is prejudicial . . . [if] there is a significant probability . . . that the jury would have acquitted the defendant had it not been for the error or errors which occurred"). Therefore, the court finds that appellate counsel did not render ineffective assistance by not raising this argument on direct appeal and trial counsel did not render ineffective assistance by withholding objection.

Petitioner also claims he was denied effective assistance because appellate counsel did not raise on appeal trial counsel's failure to object to an improper jury instruction on justification. The court gave the following jury instructions on justification:

The Court is advising you that the defense of justification is not available to the initial aggressor.

Now, the person who takes the offensive when he is not being attacked or about to be attacked and strikes or attempts to strike the first blow or inflicts the first wound is the initial aggressor . . .

Again, the person who takes the offensive when he is not being attacked, or about to be attacked, and strikes or attempts to strike the first blow or inflicts the first would is the initial aggressor.

(Tr. 1056-57.)  Petitioner claims that the instruction regarding the initial aggressor was incorrect because if a person is "about to be attacked," then that person has taken a defensive position and cannot be the initial aggressor.  (*Coram Nobis* Pet. at 7.)

New York Penal Law Section 35.00 defines initial aggressor as "the person who first attacks or threatens to attack; that is, the first person who uses or threatens the imminent use of offensive physical force."  N.Y. Penal Law § 35.00; *see also People v. Baez*, 118 A.D.2d 507, 508 (1st Dep't 1986) ("an initial aggressor is the one threatening to use or using physical force").  If a person is about to be attacked, then the person "threatening the use of offensive force" would be the initial aggressor.  N.Y. Penal Law § 35.00; *see also People v. Davis*, No. 454/01, 2002 WL 576084, at *2 (N.Y. Sup. Ct. Feb. 27, 2002) (defining initial aggressor as "[o]ne who does not reasonably believe that he is being attacked, or about to be attacked, but who, nevertheless strikes the first blow") (internal quotation marks and citation omitted).  The trial court thus erred by advising the jury that "the person who takes the offensive when he is not being attacked *or about to be attacked* and strikes or attempts to strike the first blow or inflicts the first wound is the initial aggressor."  (Tr. 1056-57.)

Nevertheless, appellate counsel's failure to note that trial counsel did not object to the justification instruction did not constitute ineffective assistance of counsel.  As discussed above, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to

prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Sellan*, 261 F.3d at 317. Petitioner's claim must fail because appellate counsel's representation did not fall below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

More importantly, petitioner was found guilty of first degree murder, where justification was not a defense. Even if appellate counsel had argued this point on direct appeal, the Appellate Division would have found the error harmless in light of the fact that the jury did not reach the second degree murder charge because it found that the government met its burden for first degree murder. *See Crimmins*, 36 N.Y.2d at 242. For this same reason, trial counsel's failure to object to the jury instruction does not constitute ineffective assistance of counsel. Since the jury found petitioner guilty of first degree murder and did not reach the issue of justification for the charge of intentional second degree murder, the error did not affect the outcome of the proceedings. In sum, petitioner's ineffective assistance of counsel claims are denied in their entirety.

## III. CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is denied. A certificate of appealability shall not issue, as petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253 (c)(2); Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
        March 23, 2010

                                        _____/s/_____
                                        DORA L. IRIZARRY
                                        United States District Judge